## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOME LOAN MORTGAGE CORPORATION; FEDERAL HOUSING FINANCE AGENCY, in its capacity as an agency of the federal government and in its capacity as Conservator of Fannie Mae and Freddie Mac; AMY WETTERSTEN; RAMA GROUP INTERNATIONAL, INC.; ANGEL RAMOS; BARBARA RAMOS; and VEERAL PATEL, | ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 15-cv-9150 |
| Plaintiffs, | ) ) | Complaint for Declaratory, Injunctive Relief, and Administrative Review |
| v. | ) ) ) | |
| CITY OF CHICAGO; CHICAGO DEPARTMENT OF FINANCE; CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS; RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago; DANIEL WIDAWSKY, in his official capacity as Comptroller of the City of Chicago; and PATRICIA JACKOWIAC, in her official capacity as Director of the City of Chicago Department of Administrative Hearings, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>COMPLAINT</u>

Plaintiffs Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan

Mortgage Corporation ("Freddie Mac," and together with Fannie Mae, the "Enterprises"),

Federal Housing Finance Agency in its capacities as regulator and Conservator of the Enterprises

("FHFA" or the "Conservator," and together with the Enterprises, the "Federal Plaintiffs"), Amy

Wettersten, Rama Group International, Inc. ("Rama Group"), Angel Ramos, Barbara Ramos, and

Veeral Patel, for their Complaint against the Defendants[1] named herein ("Defendants") allege as follows:

## INTRODUCTION

1. Congress created Fannie Mae and Freddie Mac as federally chartered corporations and charged them with the mission of facilitating a secondary mortgage market to support affordable homeownership throughout the United States. To further that mission, and to reduce and make more uniform the costs the Enterprises would face in pursuing it, Congress expressly exempted the Enterprises and the Conservator from all state and local taxation, with a single exception (for direct taxation of real property) that is inapplicable here. These federal statutes preempt any state law purporting to impose excise taxes on the Enterprises' or the Conservator's transactions. The Supreme Court has recognized that state and local governments cannot evade similar exemption statutes by purporting to make the exempt entities' transactional counterparties, rather than the exempt entities themselves, liable for transaction-based taxes.

2. This action arises from actions of the City of Chicago (the "City") and certain of its officials to tax the Enterprises' sales of real property acquired through foreclosure—*i.e.*, transactions embodying one of the Enterprises' congressionally authorized mortgage-related activities. Given the breadth of the federal statutes exempting the Enterprises from "all [state and local] taxation," and U.S. Supreme Court precedent establishing that similarly worded exemptions cover the exempt entity's transactions regardless of the party purportedly liable for an excise tax, the City cannot lawfully impose excise taxes on

---

[1] The Counterparty Plaintiffs (as hereinafter defined) assert claims only against Defendant City of Chicago Department of Finance.

an Enterprise's sale of real property or collect such taxes from any party to such a transaction. Yet, that is what the City and its officials purport to do. To resolve the existing, actual controversy as to the application of the Enterprises' and the Conservator's federal statutory tax exemptions, the Federal Plaintiffs are entitled to a judgment declaring that:

(1) Defendants cannot impose the City's excise tax under the City's Municipal Code § 3-33 (the "Transfer Tax") on transactions transferring real property to or from either Enterprise or the Conservator, and (2) Defendants cannot collect or attempt to collect the Transfer Tax from counterparties of the Enterprises or the Conservator. Further, the Federal Plaintiffs seek preliminary and permanent injunctive relief prohibiting the Defendants from imposing, collecting, or attempting to collect Transfer Tax on any real property conveyance involving the Enterprises. In addition, Plaintiffs Amy Wettersten, Rama Group, Angel Ramos, Barbara Ramos, and Veeral Patel (together, "Counterparty Plaintiffs") seek specific relief pursuant to 735 ILCS 5/3-101 *et seq.* against Defendant City of Chicago Department of Finance and ask this Court to reverse the decisions of Administrative Law Judge Carol J. Chavez that held them liable for transfer taxes, interest, and penalties, as affirmed by the Director of the Department of Administrative Hearings.

## JURISDICTION AND VENUE

3.      This action seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

4.      This action also seeks injunctive relief under 28 U.S.C. § 2202.

5.      Jurisdiction of this Court is founded on 28 U.S.C. § 1345, which gives federal courts original jurisdiction over claims brought by FHFA, including in its capacities as the Conservator and regulator of the Enterprises.

6.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the Constitution and laws of the United States.

7.      This Court also has jurisdiction pursuant to 12 U.S.C. § 1452(f), which provides that "[n]otwithstanding . . . any other provision of law, . . . [Freddie Mac] shall be deemed to be an agency" for the purposes of 28 U.S.C. § 1345 and 28 U.S.C. § 1442, and "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value[.]"

8.      As to the Counterparty Plaintiffs, this action seeks judicial review and relief pursuant to 735 ILCS 5/3-101 *et seq*.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to the extent such review and relief involves a question arising under the Constitution and laws of the United States, as more fully described in this Complaint, as well as supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367 because the Counterparties' claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Specifically, the claims of the Enterprises and those of the Counterparty Plaintiffs derive from a common nucleus of operative fact: the City's unlawful imposition of the Transfer Tax on transactions involving an Enterprise, including transactions between Fannie Mae and the Counterparty Plaintiffs.

9.      The Tax Injunction Act (the "TIA"), 28 U.S.C. § 1341, does not divest this Court of jurisdiction over this action because the Plaintiff FHFA is "an independent agency of the Federal Government." 12 U.S.C. § 4511; *see Jefferson Cnty. v. Acker*, 527 U.S. 423, 436 (1999); *Dep't of Emp't v. United States*, 385 U.S. 355, 358 (1966). Indeed, the Seventh Circuit recently confirmed that the TIA is no bar to declaratory and injunctive relief claims where FHFA is a plaintiff. *DeKalb Cnty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795, 804 (7th Cir. 2013). Moreover, Freddie Mac's federal statutory charter vests the U.S. district courts with subject-matter jurisdiction over "all civil actions to which [Freddie Mac] is a party," "[n]otwithstanding . . . any other provision of law," thus independently superseding the TIA. 12 U.S.C. § 1452(f); *see Bank of New England Old Colony, N.A. v. Clark*, 986 F.2d 600, 604 (1st Cir. 1993) (holding statute authorizing FDIC to remove "all" actions insufficient to overcome TIA but noting that addition of a "notwithstanding any other provision of law" clause—present in the jurisdiction provision of Freddie Mac's charter—would have manifested "a clear intent to override any conflicting statutes in existence," including the TIA).

10.     Venue lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391, because at least one of the Defendants resides in the Northern District of Illinois, and a substantial part of the events or omissions giving rise to the claims occurred in this District. Further, there are common questions of law and fact with regard to all Defendants.

## PARTIES

11.     The Enterprises are government-sponsored enterprises chartered by Congress with the mission to provide liquidity, stability, and affordability to the United States housing and

mortgage markets, including by establishing secondary market facilities for residential mortgages and by promoting access to mortgage credit throughout the Nation. 12 U.S.C. §§ 1716, 1451 note. Fannie Mae is located at 3900 Wisconsin Avenue, N.W. in Washington, District of Columbia. Freddie Mac is located at 8200 Jones Branch Drive in McLean, Virginia.

12. FHFA is an independent federal agency created on July 30, 2008, pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"), Pub L. No. 110-289, 122 Stat. 2654, *codified at* 12 U.S.C. § 4617 *et seq.*, to oversee the Enterprises and the Federal Home Loan Banks. FHFA is the exclusive federal supervisory regulator of the Enterprises. Recognizing the vital role the Enterprises play in the health and stability of the Nation's housing market—including the availability of affordable housing—Congress created FHFA and granted it broad powers, including the authority to place the Enterprises in conservatorship or receivership. 12 U.S.C. §§ 4501, 4617(a). FHFA is located at 400 Seventh Street, S.W., in Washington, District of Columbia.

13. On September 6, 2008, the Director of FHFA placed the Enterprises into conservatorship and appointed FHFA as Conservator. In that capacity, FHFA has succeeded to "all rights, titles, powers, and privileges of [each Enterprise]," including, but not limited to, the authority to bring suits on behalf of and/or for the benefit of either or both. *See id.* § 4617(b)(2).

14. FHFA brings this action in its capacities both as the federal agency tasked with regulating the Enterprises and as Conservator of each Enterprise.

15.     Amy Wettersten is a non-governmental owner of real property commonly described as 5330 West Hutchinson Street, Chicago, Illinois, which she purchased from Fannie Mae on August 23, 2013.

16.     Rama Group is an Illinois corporation incorporated under the Business Corporation Act with its principal place of business in Chicago, Illinois.  On December 12, 2014, Rama Group purchased from Fannie Mae real property commonly described as 2923 North Sacramento Avenue, Chicago, Illinois.

17.     Angel Ramos and Barbara Ramos are non-governmental owners of real property commonly described as 6935 West Wolfman Street, Chicago, Illinois, which Angel and Barbara Ramos purchased from Fannie Mae on March 17, 2014.

18.     Veeral Patel is a non-governmental owner of real property commonly described as 1111 West Maple Street, Unit 3411, Chicago, Illinois, which Veeral Patel purchased from Fannie Mae on August 12, 2013.

19.     Defendants are the City of Chicago, the Chicago Department of Finance, the City of Chicago Department of Administrative Hearings, and city officials charged with allocating and administering the revenue the Transfer Tax generates; calculating, assessing, and collecting the Transfer Tax; and overseeing hearings of disputes involving the Transfer Tax.  Individual Defendants are sued only in their official capacities.

20.     Defendant City of Chicago is a political subdivision of the State of Illinois.  Defendant Chicago Department of Finance is the administrative agency seeking to impose and collect the Transfer Tax.  Defendant Chicago Department of Administrative Hearings is the administrative agency that conducts hearings relating to the imposition and attempted

collection of the Transfer Tax, including completed hearings relating to transactions involving each Counterparty Plaintiff.

21. Rahm Emanuel is the Mayor of Chicago. The Office of the Mayor oversees all executive functions of the City, including authority to act, or to designate the authority to act, in the enforcement of any city ordinance, including the City of Chicago Municipal Code (the "Chicago Municipal Code") provisions at issue here. Chicago Municipal Code § 2-4-030. The Office of the Mayor is located at City Hall, 121 North LaSalle Street, Chicago, Illinois. Defendant Emanuel is sued only in his official capacity.

22. Daniel Widawsky is the Comptroller of the City of Chicago. The Office of the City Comptroller oversees the Department of Finance for the City of Chicago. The Department of Finance is responsible for managing the City's financial resources and collecting and disbursing City revenues, including all municipal taxes. The Office of the City Comptroller is located at City Hall, 121 North LaSalle Street, Suite 700, Chicago, Illinois. Defendant Widawsky is sued only in his official capacity.

23. Patricia Jackowiac is the Director, City of Chicago Department of Administrative Hearings. The Office of the Director, City of Chicago Department of Administrative Hearings oversees hearings of disputes concerning municipal taxes including the Transfer Tax. The Office of the Director, City of Chicago Department of Administrative Hearings is located at 740 North Sedgwick Street, Chicago, Illinois. Defendant Jackowiac is sued only in her official capacity.

**THE FEDERAL STATUTORY EXEMPTION OF TRANSFERS
INVOLVING THE ENTERPRISES AND THE CONSERVATOR
FROM ALL STATE AND LOCAL TAXATION**

24. Congress chartered Fannie Mae to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Congress similarly chartered Freddie Mac to "provide stability in the secondary market for residential mortgages," to "provide ongoing assistance to the secondary market for residential mortgages," including "mortgages on housing for low- and moderate-income families" by "increasing the liquidity" of the market, and "to promote access to mortgage credit throughout the Nation." *Id.* § 1451 note.

25. To further the Enterprises' important public mission of providing a secondary market for residential mortgages and promoting access to mortgage credit for low- and moderate-income families, Congress exempted the Enterprises and the Conservator from "all taxation" imposed by any state or local government, with a single, narrow carve-out that permits direct, non-discriminatory taxation of their real property. *Id.* §§ 1723a(c)(2) (Fannie Mae), 1452(e) (Freddie Mac), 4617(j)(2) (Conservator). That carve-out does not apply here because the Transfer Tax is not a tax on real property, but rather a tax on the transfer of property. *See DeKalb Cnty.*, 741 F.3d at 801. Confirming the breadth of these statutory exemptions, Congress enacted illustrative "including" clauses noting that the exemptions cover the Enterprises' "franchise[s]," Fannie Mae's "mortgages," and Freddie Mac's "activities." 12 U.S.C. §§ 1723a(c)(2) (Fannie Mae), 1452(e) (Freddie Mac), 4617(j)(2) (Conservator).

26. Fannie Mae's charter provides:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

*Id.* § 1723a(c)(2).

27.    Freddie Mac's charter similarly provides:

> The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by . . . any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

*Id.* § 1452(e).

28.    FHFA, in its capacity as Conservator, is also exempt from all state and local taxation except for taxes assessed on its real property.  HERA provides that the Conservator,

> [i]ncluding its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the [Conservator] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . .

*Id.* § 4617(j)(1), (2).  By HERA's express terms, this exemption for state and local taxation applies to the property and business of the conservatorships, which includes the property and business of the Enterprises, to which the Conservator has succeeded as a matter of law.  *Id.* § 4617(b)(2)(A).

29.    Under the Supremacy Clause of the U.S. Constitution, the federal statutory exemptions from taxation granted the Enterprises and the Conservator must be given preemptive

effect over any state law that would otherwise impose taxes within the exemptions' scope. U.S. Const. art. VI, cl. 2.

30.     The Seventh Circuit Court of Appeals, among others, has confirmed recently that the federal exemption statutes preclude imposition of real estate transfer taxes levied by state or local governments. *DeKalb Cnty.*, 741 F.3d at 801.

31.     As the Supreme Court has held, "regardless of who pays" the taxes on a transaction, its "necessary effect" is the same: to tax the transactions and "to increase the cost" to the exempt entities, thereby constituting a tax that is preempted by federal law. *Laurens Fed. Savs. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517, 519-22 (1961); *see Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21, 30-31 (1939) (holding that a state cannot evade the protection afforded an exempt entity by collecting a tax from that entity's counterparties).

32.     Therefore, Transfer Taxes imposed on transactions transferring property to and from the Enterprises are, pursuant to the Supremacy Clause, superseded by the federal statutory exemptions.

## THE CHICAGO REAL PROPERTY TRANSFER TAX

33.     Acting pursuant to their congressionally mandated missions, the Enterprises have purchased significant volumes of residential mortgages, including mortgages on property located in Chicago, on the secondary market. In recent years, a large number of these mortgages have been subject to foreclosure proceedings.

34.     As part of the foreclosure process, title to the underlying property is often transferred from the borrower to the Enterprises, although it is possible for a third-party to be the

initial foreclosure purchaser. To mitigate their losses, the Enterprises generally liquidate
properties they acquire though foreclosures by selling them to third-party purchasers.

35. The Chicago Real Property Transfer Tax Ordinance ("Ordinance") establishes and
governs the Transfer Tax. Chicago Municipal Code § 3-33. The Transfer Tax is
imposed on a party's exercise of the "*privilege of transferring title to, or beneficial
interest in, real property*" located in the City of Chicago. *Id.* § 3-33-030(A) (emphasis
added). Thus, the Transfer Tax is not a tax on real property, but rather a transaction-
based local excise tax.

36. The Ordinance levies a mandatory privilege tax of $3.75 per every $500.00, or fraction
thereof, of assessed real property value on transactions in which real property located
within the City of Chicago is transferred ("City Portion"). Revenue generated by the City
Portion of the Transfer Tax is deposited with the Department of Finance. In addition,
pursuant to Illinois Municipal Code § 8-3-19, "a supplemental tax at the rate of $1.50 per
$500.00 of the transfer price, or fraction thereof," has been imposed on transfers
occurring on or after April 1, 2008, "for the purpose of providing financial assistance to
the Chicago Transit Authority" ("C.T.A. Portion"). 65 ILCS 5/8-3-19. The Department
of Finance administers and enforces the C.T.A. Portion. Revenue generated by the
C.T.A. Portion of the Transfer Tax—minus "a reasonable collection fee" retained by the
Department of Finance—is transferred to the Chicago Transit Authority. Chicago
Municipal Code, § 3-33-030(F).

37. The Chicago Municipal Code purports to impose the City Portion of the Transfer Tax on
the purchaser, grantee, assignee, or other transferee who bears the primary obligation to
pay, unless exempt by operation of state law. Chicago Municipal Code, § 3-33-030(C).

In contrast, the transferor is responsible for paying the C.T.A. Portion, but "if the transferor is exempt from the tax solely by operation of state or federal law, then the incidence of the C.T.A. Portion of the tax and obligation to pay the C.T.A. Portion of the tax shall be upon the purchaser, grantee, assignee or other transferee." Chicago Municipal Code, § 3-33-030(F).

## THE CONTROVERSY AND PLAINTIFFS' STANDING

38. Acquiring real property by foreclosure and liquidating that property by sale is an inherent, foreseeable, and unavoidable activity for large mortgage investors such as the Enterprises.

39. Notwithstanding the federal statutory provisions expressly exempting the Enterprises and the Conservator from "all [state and local] taxation" other than taxes on their real estate, Defendants Department of Finance and Widawsky have imposed and are attempting to collect municipal excise taxes—specifically, the Transfer Tax pursuant to Chicago Municipal Code § 3-33—on transactions transferring property from one or both Enterprises to other parties.

40. On March 3, 2015, the Chicago Department of Finance issued a notice of tax determination and assessment against Amy Wettersten alleging liability for non-payment of the Transfer Tax for her purchase of real property commonly described as 5330 West Hutchinson Street, Chicago, Illinois from Fannie Mae. The notice alleged that Wettersten owed, as of February 25, 2015, a total of $3,280.76, consisting of $2,215.50 in tax; $400.61 in interest; a $110.78 failure to file/late penalty; and a $553.88 willfulness/negligence penalty, with interest continuing to accrue pursuant to Chicago

Municipal Code § 3-4-190, *et seq.* *See* Notice of Tax Determination and Assessment from City of Chicago Department of Finance (Mar. 3, 2015) (attached as Ex. 1).

41. On or about March 7, 2015, the Chicago Department of Finance issued a notice of tax determination and assessment against the Rama Group alleging liability for non-payment of the Transfer Tax for its purchase of real property commonly described as 2923 North Sacramento Avenue, Chicago, Illinois from Fannie Mae. The notice alleged that the Rama Group owed a total of $2,797.08 [sic], consisting of $2,110.50 in tax; $53.43 in interest (through February 26, 2015); a $105.53 failure to file/late penalty; and a $527.63 willfulness/negligence penalty, with interest continuing to accrue pursuant to Chicago Municipal Code § 3-4-190, *et seq.* *See* Notice of Tax Determination and Assessment from City of Chicago Department of Finance (Mar. 7, 2015) (attached as Ex. 2).

42. On March 13, 2015, the Chicago Department of Finance issued a notice of tax determination and assessment against Angel and Barbara Ramos alleging liability for non-payment of the Transfer Tax for their purchase of real property commonly described as 6935 West Wolfram Street, Chicago, Illinois from Fannie Mae. The notice alleged that they owed a total of $2,675.72, consisting of $1,890.00 in tax; $218.72 in interest (through March 5, 2015); a $94.50 failure to file/late penalty; and a $472.50 willfulness/negligence penalty, with interest continuing to accrue pursuant to Chicago Municipal Code § 3-4-190, *et seq.* *See* Notice of Tax Determination and Assessment from City of Chicago Department of Finance (Mar. 13, 2015) (attached as Ex. 3).

43. On March 9, 2015, the Chicago Department of Finance issued a notice of tax determination and assessment against Veeral Patel alleging liability for non-payment of the Transfer Tax for his purchase of real property commonly described as 1111 West

Maple Street, Unit 3411, Chicago, Illinois from Fannie Mae. The notice alleged that

Patel owed a total of $3,122.15, consisting of $2,100.00 in tax; $392.15 in interest

(through March 4, 2015); a $105.00 failure to file/late penalty; and a $525.00

willfulness/negligence penalty, with interest continuing to accrue pursuant to Chicago

Municipal Code § 3-4-190, *et seq. See* Notice of Tax Determination and Assessment

from City of Chicago Department of Finance (Mar. 9, 2015) (attached as Ex. 4).

44. The foregoing notices make no reference to the federal statutes that exempt transactions

involving the Enterprises or Conservator from the Transfer Tax. Nor do the notices

acknowledge that, under the Supremacy Clause of the U.S. Constitution, the City may not

impose the Transfer Tax on transactions that enjoy immunity from taxation under federal

law.

45. Each Counterparty Plaintiff filed a tax protest within the time permitted under the

Chicago Municipal Code without paying the Transfer Tax, interest, or penalties. Each of

the protests was assigned to Administrative Law Judge Carol J. Chavez (the "ALJ") in

the City of Chicago Department of Administrative Hearings. Because of the common

fact patterns and issues, the parties to the protests agreed to stipulate to the facts and

present cross-motions for summary judgment, and the ALJ held consolidated oral

argument for the four tax protests. On or about September 10, 2015, the ALJ in separate

decisions adjudged each Counterparty Plaintiff liable for the Transfer Tax, interest, and

penalties. *See* Findings, Decision, and Order, *Wettersten v. City of Chicago*, No.

15TX0510 (Chi. Dep't Admin. Hearings, Municipal Div., Tax Section, Sept. 10, 2015)

(attached as Ex. 5); Findings, Decision, and Order, *Rama Group Int'l, Inc. v. City of*

*Chicago*, No. 15TX0511 (Chi. Dep't Admin. Hearings, Municipal Div., Tax Section,

Sept. 10, 2015) (attached as Ex. 6); Findings, Decision, and Order, *Ramos v. City of Chicago*, No. 15TX0516 (Chi. Dep't Admin. Hearings, Municipal Div., Tax Section, Sept. 10, 2015) (attached as Ex. 7); Findings, Decision, and Order, *Patel v. City of Chicago*, No. 15TX0517 (Chi. Dep't Admin. Hearings, Municipal Div., Tax Section, Sept. 10, 2015) (attached as Ex. 8) (collectively, the "ALJ Decisions"). The ALJ's reasoning and legal conclusions were materially identical across the four decisions. Specifically, the ALJ in each of the decisions discussed the Counterparty Plaintiffs' claim that Fannie Mae's Exemption Statute insulated them from liability for the Transfer Taxes, interest, and penalties, but the ALJ concluded that she did not have the authority to decide the issue under § 3-4-340(A)(2) of the Chicago Municipal Code, which provides, in pertinent part, "that the administrative law officer shall not hear or decide any claim that any ordinance is unconstitutional on its face or that the city council did not have authority to enact the ordinance." *See, e.g.*, *Wettersten*, No.15TX0510, at 12-17.

46.     On September 23, 2015, each Counterparty Plaintiff separately petitioned Director Jackowiac pursuant to § 3-4-340(H)(5) of the Municipal Code and asked her to reverse the ALJ's decision regarding their respective federal preemption claims on the grounds that the ALJ had the authority to decide the claims under § 3-4-340(A)(2). On October 6, 2015, Director Jackowiac issued her separate decisions for each of the four petitions, all of which affirmed the ALJ's decision. *See* Director's Final Ruling and Decision, *Wettersten v. City of Chicago*, No. 15TX0510 (Chi. Dep't Admin. Hearings, Oct. 6, 2015) (attached as Ex. 9); Findings, Decision, and Order, *Rama Group Int'l, Inc. v. City of Chicago*, No. 15TX0511 (Chi. Dep't Admin. Hearings, Oct. 6, 2015) (attached as Ex. 10); Findings, Decision, and Order, *Ramos v. City of Chicago*, No. 15TX0516

(Chi. Dep't Admin. Hearings, Oct. 6, 2015) (attached as Ex. 11); Findings, Decision, and Order, *Patel v. City of Chicago*, No. 15TX0517 (Chi. Dep't Admin. Hearings, Oct. 6, 2015) (attached as Ex. 12) (collectively, the "Director Decisions").

47. Counterparty Plaintiffs have exhausted the City's administrative process for contesting the notices of tax determination and assessment, and no further administrative recourse is available to them: thus, their sole avenue for redress is a judicial proceeding.

48. Because the Decisions were based on stipulated facts, no oral testimony was presented and there is no transcript of evidence for Defendants to file.

49. On information and belief, Defendants are taking similar actions and maintain the same position with regard to Freddie Mac's sales of real property in Chicago.

50. Defendants may not lawfully assess or collect the Transfer Tax on transactions involving the transfer of real property to or from either Enterprise—or impose any penalties or fees for non-payment—because the Transfer Tax falls squarely within the expansive, clearly worded statutory provisions exempting the Enterprises and their Conservator from materially "all [state and local] taxation." 12 U.S.C. §§ 1452(e), 1723a(c)(2), 4617(j)(2). Under the Supremacy Clause of the U.S. Constitution, these federal statutes are "the supreme law of the land," and Defendants therefore cannot lawfully impose the taxes at issue upon the Enterprises, the Conservator, their transactions, or the counterparties to those transactions. U.S. Const., art. VI, cl. 2.

51. Payment of the Transfer Tax by any party to a real property conveyance involving an Enterprise threatens to divert funds from the Enterprises' congressionally mandated mission. Regardless of whether the Enterprises or their transactional counterparties (*i.e.*, the purchasers in Enterprise sales of foreclosed property) bear initial liability for payment

of the tax, imposition of the tax unlawfully burdens the Enterprises' operations by increasing the transaction cost for each transfer.

52. Defendants' clearly articulated demands, intentions, and threats to exact monies to which they are not lawfully entitled will continue to injure the Enterprises absent the relief the Federal Plaintiffs seek.

53. The Federal Plaintiffs therefore bring this action to obtain (1) a judgment declaring that the express federal statutory exemptions bar the Defendants from imposing the Transfer Tax on the Plaintiffs' transactions, and (2) an injunction ordering the Defendants to refrain from imposing or attempting to collect Transfer Tax on any transaction involving the Enterprises, without regard to whether such transactions have already occurred or will occur in the future. Counterparty Plaintiffs further ask this Court to review and reverse the ALJ Decisions and the Director Decisions against them in their entirety, and declare that they are not liable for the Transfer Tax, interest, or fines and penalties associated with it. Specifically, the ALJ Decisions and the Director Decisions are erroneous in each of the following respects:

   a. The purchases are tax-exempt under 12 U.S.C. § 1723a(c)(2), which preempts the City's Transfer Tax;

   b. The purchases are tax-exempt under Exemption B because Fannie Mae is a federal instrumentality for purposes of state and local taxation; and

   c. Counterparty Plaintiffs should not be subject to fines, penalties, or interest because they are not liable for the Transfer Tax for the reasons set forth above. Counterparty Plaintiffs also should not be subject to fines or penalties because they timely filed Transfer Tax declarations asserting a tax exemption in good faith

and timely asserted bona fide objections to the imposition of the Transfer Tax through the tax protest proceedings.

54. Declaratory and permanent injunctive relief will redress the injury that the Enterprises otherwise will suffer.

55. Preliminary injunctive relief will prevent the otherwise irreparable harm that the Federal Plaintiffs and other counterparties to transactions involving the Enterprises will suffer prior to the entry of judgment in Plaintiffs' favor.

56. In its capacity as the Enterprises' Conservator, FHFA has the power to bring this action for the Enterprises' benefit. 12 U.S.C. § 4617(b)(2). FHFA also has the power to bring this action in its capacity as the federal supervisory regulator for the Enterprises. HERA provides that the Director of FHFA has "general regulatory authority . . . to ensure that the purposes of [HERA], the authorizing statutes, and any other applicable law are carried out." *Id.* § 4511(b). In addition, the FHFA Director has the authority "to exercise such incidental powers as may be necessary . . . in the supervision and regulation of each [Enterprise]." *Id.* § 4513(a)(2)(B).

## CLAIM FOR RELIEF

### COUNT I – THE FEDERAL PLAINTIFFS AGAINST ALL DEFENDANTS

### DECLARATORY RELIEF

57. The Federal Plaintiffs reassert and incorporate herein by reference the allegations contained in paragraphs 1-56 above, as though fully set forth herein.

58. Defendants' imposition of the Transfer Tax on transactions transferring property to or from the Enterprises violates the Enterprises' and the Conservator's statutory exemptions from state and local taxation, which under the Supremacy Clause of the U.S. Constitution

preempt the Chicago Municipal Code provisions under which Defendants purport to impose the Transfer Tax.

59.   Pursuant to 28 U.S.C. §§ 2201-02, the Federal Plaintiffs are entitled to a declaratory judgment that Defendants cannot impose Transfer Taxes on transactions transferring property to or from either Enterprise or the Conservator, and that Defendants cannot attempt to collect the Transfer Tax from counterparties of the Enterprises or the Conservator on any such transactions.

## COUNT II – THE FEDERAL PLAINTIFFS AGAINST ALL DEFENDANTS
## INJUNCTIVE RELIEF

60.   The Federal Plaintiffs reassert and incorporate herein by reference the allegations contained in paragraphs 1-56 above, as though fully set forth herein.

61.   Defendants' imposition of the Transfer Tax on transactions transferring property to or from the Enterprises violates the Enterprises' and the Conservator's statutory exemptions from state and local taxation, which under the Supremacy Clause of the U.S. Constitution supersede the Municipal Code to the extent Defendants purport to impose the Transfer Tax on transactions transferring real property to or from either Enterprise.

62.   Pursuant to 28 U.S.C. § 2202, the Federal Plaintiffs are entitled to an injunctive order prohibiting the Defendants from assessing a transfer tax on any transaction involving the Enterprises or the Conservator, regardless of whether (1) Defendants attempt to collect the Transfer Tax from the Enterprises or the Conservator or from their counterparties to the transaction, and (2) such transactions have already occurred or will occur in the future.

## COUNT III – COUNTERPARTY PLAINTIFF WETTERSTEN AGAINST DEFENDANT

## CITY OF CHICAGO DEPARTMENT OF FINANCE

## ADMINISTRATIVE REVIEW

63.     Amy Wettersten reasserts and incorporates herein by reference the allegations contained in paragraphs 1-56 above, as though fully set forth herein.

64.     Wherefore, Amy Wettersten requests that this Court review and reverse the ALJ Decision and the Director's Decision against her in their entirety, and declare that she is not liable for the Transfer Tax sought to be imposed on her or the fines, penalties, or interest associated with it, and grant such other and further relief as the Court deems just.

## COUNT IV – COUNTERPARTY PLAINTIFF RAMA GROUP AGAINST DEFENDANT

## CITY OF CHICAGO DEPARTMENT OF FINANCE

## ADMINISTRATIVE REVIEW

65.     Rama Group reasserts and incorporates herein by reference the allegations contained in paragraphs 1-56 above, as though fully set forth herein.

66.     Wherefore, Rama Group requests that this Court review and reverse the ALJ Decision and the Director's Decision against it in their entirety, and find declare it is not liable for the Transfer Tax sought to be imposed on it or the fines, penalties, or interest associated with it, and grant such other and further relief as the Court deems just.

## COUNT V – COUNTERPARTY PLAINTIFFS RAMOS AGAINST DEFENDANT CITY

## OF CHICAGO DEPARTMENT OF FINANCE

## ADMINISTRATIVE REVIEW

67.     Angel and Barbara Ramos reassert and incorporate herein by reference the allegations contained in paragraphs 1-56 above, as though fully set forth herein.

68.     Wherefore, Angel and Barbara Ramos request that this Court review and reverse the ALJ Decision and the Director's Decision against them in their entirety, and declare that they are not liable for the Transfer Tax sought to be imposed on them or the fines, penalties, or interest associated with it, and grant such other and further relief as the Court deems just.

## COUNT VI – COUNTERPARTY PLAINTIFF PATEL AGAINST DEFENDANT CITY OF CHICAGO DEPARTMENT OF FINANCE

### ADMINISTRATIVE REVIEW

69.     Veeral Patel reasserts and incorporates herein by reference the allegations contained in paragraphs 1-56 above, as though fully set forth herein.

70.     Wherefore, Veeral Patel requests that this Court review and reverse the Decision and the Director's Decision against him in its entirety, and declare that he is not liable for the Transfer Tax sought to be imposed on him or the fines, penalties, or interest associated with it, and grant such other and further relief as the Court deems just.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs (as the case may be) request that this Court enter an order:

(a)     declaring that pursuant to 12 U.S.C. §§ 1452(e), 1723a(c)(2), and 4617(j)(2), the Enterprises, the Conservator, and their transactions are exempt from municipal transfer taxes under Chicago Municipal Code § 3-33;

(b)     declaring that Defendants may not lawfully require payment of municipal transfer taxes under Chicago Municipal Code § 3-33 from the Conservator, the Enterprises, or their transaction counterparties, on the recordation of transfers of property to or from the Conservator or the Enterprises;

(c)     enjoining the Defendants from assessing or collecting municipal transfer taxes under Chicago Municipal Code § 3-33 from the Conservator, the Enterprises, or their transaction counterparties, on any past or future transfers of property to or from the Conservator or the Enterprises;

(d)     reviewing and reversing in their entirety the ALJ Decisions and Director Decisions addressing each Counterparty Plaintiff's tax protest proceedings pursuant to 735 ILCS5/3-101 *et seq.*, and finding that each Counterparty Plaintiff is not liable for the transfer taxes under Chicago Municipal Code § 3-33 or any interest, fines or penalties associated therewith; and

(e)     granting Plaintiffs such other relief as this Court deems just and proper.


Dated:    October 15, 2015                            Respectfully submitted,

                                                      s/ Ian H. Fisher
                                                      _____

Asim Varma*                                           Michael Sitcov
Howard Cayne*                                         FEDERAL HOUSING FINANCE
Michael Johnson*                                      AGENCY
ARNOLD & PORTER LLP                                   Room 8-227
601 Massachusetts Avenue N.W.                         OGC, Eighth Floor
Washington, DC 20001                                  Constitution Center
(202) 942-5000                                        400 Seventh Street S.W.
Asim.Varma@aporter.com                                Washington, DC  20024
Howard.Cayne@aporter.com                              (202) 649-3052
Michael.Johnson@aporter.com                           Michael.Sitcov@fhfa.gov

Ian H. Fisher                                         *Co-counsel for Plaintiff Federal Housing*
HONIGMAN MILLER SCHWARTZ                               *Finance Agency*
AND COHN LLP
One S. Wacker, 28th Floor
Chicago, IL 60606
(312) 701-9300
IFisher@honigman.com

*Attorneys for Plaintiff Federal Housing*
*Finance Agency*

Linda T. Coberly
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
lcoberly@winston.com

*Attorney for Plaintiff Federal National Mortgage Association*

Michael J. Ciatti*
Merritt E. McAlister*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500
mciatti@kslaw.com
mmcalister@kslaw.com

*Attorneys for Plaintiff Federal Home Loan Mortgage Corporation*

*\* pro hac vice applications to be filed*

Ronald A. Damashek, Esq.
Stahl Cowen Crowley Addis LLC
55 W. Monroe St., Suite 1200
Chicago, IL 60603
(312) 377-7858
Attorney No.: 6183820

*Attorney for Amy Wettersten, Rama Group International, Inc., Angel Ramos, Barbara Ramos, and Veeral Patel*