IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al.,<br><br>       Plaintiffs,<br><br>  v.<br><br>CITY OF CHICAGO, et al.,<br><br>       Defendants. | Civil Action No. 15-cv-9150<br><br>Judge Sara L. Ellis |

**<u>DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants City of Chicago ("City"), Chicago Department of Finance ("Department"), Chicago Department of Administrative Hearings ("DOAH"), Rahm Emanuel as Mayor, Daniel Widawsky as Comptroller, and Patricia Jackowiak as Director of DOAH (collectively "Defendants") move to dismiss the Complaint filed by Plaintiffs Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), Federal Housing Finance Agency ("FHFA"), Amy Wettersten, Rama Group International, Inc., Angel Ramos, Barbara Ramos and Veeral Patel (collectively "Plaintiffs"). Fannie Mae, Freddie Mac and FHFA are sometimes referred to herein collectively as the "Federal Plaintiffs." Fannie Mae and Freddie Mac are sometimes referred to herein collectively as the "Enterprises." Amy Wettersten, Rama Group International, Inc., Angel Ramos, Barbara Ramos and Veeral Patel are sometimes referred to herein collectively as the "Taxpayer Plaintiffs."

As we explain below, this case should be dismissed because:

I.    Freddie Mac does not allege any existing case or controversy concerning its operations.

II. The Federal Plaintiffs do not have standing because the Complaint does not allege that the Defendants have attempted to tax them, and any indirect effect of taxing the Taxpayer Plaintiffs, who purchased property from Fannie Mae, would be insufficient to confer standing.

III. The claims of the Taxpayer Plaintiffs are barred by the Tax Injunction Act.

IV. On the merits, as a matter of law, the plain language of the federal statutes does not preempt taxation of the "transactions" or "counterparties" of the Enterprises.

**Background**

Pursuant to its home rule and statutory authority under Illinois law, the City imposes a tax on the transfer of real property located in the City (the "Transfer Tax" or "Tax"). *See* Ill. Const. (1970) Art. VII Sec. 6(a); 65 ILCS 5/8-3-19; Municipal Code of Chicago ("Code") Chapter 3-33. The Tax has two parts: the "City Portion" and the "CTA Portion." Code §§ 3-33-030(A), (F). The rate of the City Portion is $3.75 per $500.00 of the transfer price (0.75%), and the rate of the CTA Portion is $1.50 per $500.00 of the transfer price (0.3%). *Id*. Ordinarily, the City Portion is imposed on the buyer, and the CTA Portion is imposed on the seller. Code §§ 3-33-030(C), (F). However, if the seller is exempt from the CTA Portion by operation of state or federal law, then the CTA Portion of the Tax is imposed on the buyer. *Id*. Thus, in the case of any sales by the Enterprises, the entire Tax is imposed on the buyer.

The Complaint alleges that the Taxpayer Plaintiffs all purchased property from Fannie Mae. The Taxpayer Plaintiffs did not pay Tax in connection with those purchases, and as a result, the Department issued to each a Taxpayer Plaintiff a Notice of Tax Determination and Assessment ("Notice") seeking the unpaid Tax, plus interest and penalties.

Each of the Taxpayer Plaintiffs filed a timely Protest and Petition for Hearing ("Protest") with DOAH. After hearings, the DOAH Administrative Law Judge ("ALJ") issued decisions that dismissed the Protests and affirmed the Notices. The Taxpayer Plaintiffs filed petitions with the Director of DOAH, seeking relief from the ALJ decisions, and those petitions were denied.

The Federal Plaintiffs then brought this action seeking a declaration that the City may not impose the Tax on buyers from the Enterprises (Count I), as well as an injunction prohibiting Defendants from "assessing a transfer tax on any transaction involving" the Enterprises, regardless of who is being taxed (Count II). The Taxpayer Plaintiffs seek administrative review of the DOAH decisions under the Illinois Administrative Review Act, 735 ILCS § 5/3-101 *et seq*. (Counts III through VI).

## Argument

I. **Counts I and II should be dismissed with respect to Freddie Mac because there is no case or controversy involving it.**

The jurisdiction of federal courts is limited to "[c]ases" and "[c]ontroversies," U.S. Const. Art. III, § 2, and no case or controversy exists if the plaintiff lacks standing to challenge the defendant's alleged actions. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must show, among other things, that it has suffered a concrete and particularized injury in fact. *Id.* at 560-61. A plaintiff has the burden of establishing its standing. *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 690 (7th Cir. 2014).

Freddie Mac has not identified any existing case or controversy with the City. All of the transactions at issue concern sales of real property by Fannie Mae. *See* Complaint ¶¶15-18, 40-43. Thus, there is no actual controversy for this Court to resolve between the City and Freddie Mac, and so this Court has no jurisdiction over its claims.

## II. Counts I and II should be dismissed because the Federal Plaintiffs lack standing.

The Federal Plaintiffs do not allege that the City has applied the Transfer Tax to any of them. Instead, they allege that requiring their buyers to pay the Tax "threatens to divert funds from ... [their] mission [of assisting the secondary market for residential mortgages] ... by increasing the transaction cost for each transfer." Complaint ¶¶24, 25, 51. As a matter of law, these allegations are insufficient to establish standing. "[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required ..." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 39-40 (1976). *See also Warth v. Seldin*, 422 U.S. 490, 504-08 (1975) (plaintiffs could not establish standing by complaining that zoning practices indirectly led to a general lack of affordable housing, because plaintiffs could not allege a "demonstrable, particularized injury"). Any alleged aggregate effect of the Transfer Tax on the sale of Chicago properties is not sufficient to establish standing. *Id*. The Federal Plaintiffs are not directly injured by the Transfer Tax, and therefore they do not have standing.

## III. The Tax Injunction Act divests this Court of jurisdiction over Counts III through VI, brought by the Taxpayer Plaintiffs.

The Tax Injunction Act (the "TIA"), 28 U.S.C. § 1341, divests federal district courts of jurisdiction over challenges to state taxes. The TIA applies equally to municipal and local taxes. *Hager v. City of W. Peoria*, 84 F.3d 865, 868 n.1 (7th Cir. 1996). Although the TIA does not apply when the United States sues to protect itself or its instrumentalities from state taxation, the Federal Plaintiffs are not directly injured and have no standing. Thus, the dismissal of their claims leaves only Counts III through VI, which are the Taxpayer Plaintiffs' claims for administrative review under state law. Because Illinois law provides for a plain, speedy, and efficient remedy in the Illinois courts (*see* 735 ILCS 5/3-101 *et seq.*), the TIA requires the

dismissal of these Counts. The TIA divests this Court of jurisdiction, and this Court should dismiss those claims.

**IV.     In the alternative, this case should be dismissed pursuant to Rule 12(b)(6).**

The Supreme Court has recognized that the taxation authority of state government is central to state sovereignty. *Department of Revenue of Oregon v. ACF Industries, Inc.*, 510 U.S. 332, 345 (1994). "When determining the breadth of a federal statute that impinges upon or pre-empts the States' traditional powers, we are hesitant to extend the statute beyond its evident scope." *Id.* "We do not, absent unambiguous evidence, infer a scope of pre-emption beyond that which clearly is mandated by Congress' language." *Id.*, *quoting Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 533 (1992) (internal citations omitted). Thus, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone*, 505 U.S. at 517. A federal statute should be interpreted to preempt a traditional state power only if that result is "the clear and manifest purpose of Congress." *Oregon*, 510 U.S. at 345, *quoting Rice v. Santa Fe Elevator Corp.*, 31 U.S. 218, 230 (1947); *see also BFP v. Resolution Trust Corporation*, 511 U.S. 531, 544 (1994) ("To displace traditional state regulation ... the federal statutory purpose must be clear and manifest") (internal quotations omitted); *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715 (1985) ("Where ... the field that Congress is said to have pre-empted has been traditionally occupied by the States we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress") (internal quotations omitted).

The rules concerning tax exemptions are the same. *See, e.g., U.S. v. Wells Fargo Bank*, 485 U.S. 351, 353-54 (1988) (allowing estate tax, a form of transfer tax, on exempt public housing obligations and stating, "[e]xemptions from taxation are not to be implied; they must be

unambiguously proved"); *U.S. v. Stewart*, 311 U.S. 60, 68-71 (1940) (allowing income tax on capital gains from farm loan bonds where the "income derived" from the bonds was exempt and stating, "[e]xemptions from taxation cannot rest upon mere implications").

In their Complaint, the Federal Plaintiffs at various points allege that the Fannie Mae and Freddie Mac statutes exempt their "transactions" (Complaint ¶¶1, 2, 31, 32, 39, 50, 53, 58, 59, 61, 62), "conveyances" (Complaint ¶¶2, 51), "counterparties" (Complaint ¶¶1, 2, 51, 59, 62), and the "purchases" of their counterparties (Complaint ¶53). As a matter of law, the Federal Plaintiffs are incorrect.

The Fannie Mae statute exempts "[t]he corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income." 12 U.S.C. § 1723a(c)(2); Complaint ¶26. The Freddie Mac statute exempts "[t]he Corporation, including its franchise, activities, capital, reserves, surplus, and income." 12 U.S.C. § 1452(e); Complaint ¶27. Neither statute uses the words "transactions," "conveyances," "counterparties," or "purchases," nor does either statute use similar words such as "sales," "transfers" or "buyers." By their plain terms, the statutes do not preempt Defendants' imposition of the Transfer Tax on people who buy property from the Enterprises. The Federal Plaintiffs' position rests upon implication, which, as discussed above, is not in accordance with the case law concerning preemption and exemptions.

In their Complaint, Plaintiffs cite *Laurens Fed. Savs. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517 (1961), and *Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21 (1939). Complaint ¶31. Rather than support Plaintiffs' conclusions, these cases illustrate the difference between the federal statutes at issue in those cases and the statutes at issue here. As we explain below, the statutes at issue in those cases were not "similar" to those at issue here, nor were the exemptions "similarly worded" (Complaint ¶¶1, 2).

In *Pittman*, the Home Owners' Loan Act exempted the Home Owners' Loan Corporation from all state and municipal taxes, along with its "franchise, capital, reserves and surplus, <u>and its loans</u> and income ..." 308 U.S. at 30 (emphasis added). Maryland imposed a tax on mortgage loans. *Id.*, 308 U.S. at 29. Thus, regardless of who was to pay the Maryland tax, the tax was explicitly on the loan itself. The Supreme Court found it "critical" that the exemption specifically mentioned "loans." 308 U.S. at 32. Because the entity's "loans" were specifically exempted from taxation, it was immaterial whether the tax was to be paid by the buyer or the seller. Here, by contrast, there is no language exempting the "transactions" or "counterparties" of the Enterprises.

*Laurens* followed similar reasoning. The Federal Home Loan Bank Act exempted the Federal Home Loan Bank, "including its franchise, its capital, reserves, and surplus, <u>its advances</u>, and its income ..." 365 U.S. at 519 (emphasis added). South Carolina imposed a tax on promissory notes. *Id.*, 365 U.S. at 518. The Supreme Court stated that the term "advances" is synonymous with the term "loans," the language at issue in *Pittman*. *Laurens*, 365 U.S. at 521. The Court also observed that the promissory notes that South Carolina was taxing were required to secure the advances that the Federal Home Loan Bank Act exempted from taxation. *Id.* Since the notes were required to document the loans, the Court held that South Carolina was precluded from taxing the notes. *Id.*, 365 U.S. at 522. Here again, the difference in the language of the pertinent statutes is instructive.

Where Congress intends to preempt not only the entity but also the transactions in which it engages, it uses words such as those that were determinative in *Pittman* and *Laurens*. The fact that Congress used such words in those statutes, but did not use them in the statutes at issue here, clearly demonstrates that Congress did not intend to preclude taxes on the "transactions" or "counterparties" of the Enterprises.

The case of *DeKalb County v. Federal Housing Finance Agency*, 741 F.3d 795 (7th Cir. 2013), also cited by Plaintiffs (Complaint ¶30), is distinguishable because the Wisconsin and Illinois real property transfer taxes at issue there were imposed on the seller, and the states were therefore attempting to impose the taxes directly on the Federal Plaintiffs. By contrast, in this case, the City is imposing its Tax on the Taxpayer Plaintiffs, and not on the Federal Plaintiffs.

Revenue from the Transfer Tax is used to fund essential public services such as police protection, fire protection, street repairs, street lighting, and public transportation, to name just a few. The Taxpayer Plaintiffs benefit from these services, and if they do not pay the Transfer Tax then the burden of paying for the services is shifted to other taxpayers. Taxation is a part of the States' traditional powers, and federal preemption of that power is reserved for situations in which Congress has used language making its intent to preempt clear and manifest. Here, as a matter of law, the language used by Congress does not meet that test. If Congress believes that taxation of the "transactions" or "counterparties" of the Enterprises unacceptably interferes with their missions, then the solution is for Congress to amend the statutes concerning those entities, adding language that clearly preempts. At present, that language is absent.

**Conclusion**

For the reasons stated, the Complaint should be dismissed.

Dated: November 20, 2015             Respectfully submitted,

By: s/ Mark Christian Marvelli

Weston Hanscom (Attorney No. 3121773)
Kim Edward Cook (Attorney No. 3129104)
Mark Christian Marvelli (Attorney No. 6298544)
City of Chicago Department of Law
30 N. LaSalle Street, Suite 1020
Chicago, IL 60602
(312) 744-9077/1436/6995