# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; FEDERAL HOME LOAN MORTGAGE CORPORATION; FEDERAL HOUSING FINANCE AGENCY, in its capacity as an agency of the federal government and in its capacity as Conservator of Fannie Mae and Freddie Mac; AMY WETTERSTEN; RAMA GROUP INTERNATIONAL, INC.; ANGEL RAMOS; BARBARA RAMOS; and VEERAL PATEL, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 15 C 9150 |
| v. | ) ) | |
| | ) | Judge Sara L. Ellis |
| CITY OF CHICAGO; CHICAGO DEPARTMENT OF FINANCE; CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS; RAHM EMANUEL, in his official capacity as Mayor of the City of Chicago; DANIEL WIDAWSKY, in his official capacity as Comptroller of the City of Chicago; and PATRICIA JACKOWIAC, in her official capacity as Director of the City of Chicago Department of Administrative Hearings, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiffs Federal National Mortgage Association ("Fannie") and Federal Home Loan

Mortgage Corporation ( "Freddie")—supervised and regulated by Plaintiff Federal Housing

Finance Agency ("FHFA")—(collectively the "Federal Plaintiffs") sell homes owned by Fannie

and Freddie to private buyers, including Plaintiffs Amy Wettersten, Rama Group International,

Inc., Angel Ramos, Barbara Ramos, and Veeral Patel (collectively the "Buyer Plaintiffs").

Defendant City of Chicago (the "City") taxes these sales with a "Transfer Tax" that the Chicago

Department of Finance (the "Department of Finance") imposes and collects. Plaintiffs allege

that Congress exempted Fannie, Freddie, and FHFA from all taxation, except for real property

taxes, and they seek injunctive and declaratory relief in the form of a ruling that the City cannot

impose the Transfer Tax on transfers of Fannie and Freddie real estate, regardless of which party,

buyer or seller of the property, pays the Transfer Tax. Defendants City and its mayor, Rahm

Emanuel, the Department of Finance and its comptroller, Daniel Widawsky, and City

Department of Administrative Hearings (the "Department of Administrative Hearings") and its

director, Patricia Jackowiac, move to dismiss Plaintiffs' claims for lack of subject matter

jurisdiction and for failure to state a claim. Plaintiffs, in addition to opposing Defendants'

motion, also move for summary judgment on their claims. Because the Federal Plaintiffs have

articulated a concrete injury, satisfying the standing requirement to pursue their claims, and

because the Court has jurisdiction when FHFA brings suit, the Court denies Defendants' motion

to dismiss for lack of subject matter jurisdiction. Because Fannie's, Freddie's, and FHFA's

statutory tax exemptions apply to the excise taxes on real property sales involving Federal

Plaintiffs and because it would frustrate the purpose of the tax exemptions to allow the City to

require buyers of Fannie and Freddie properties to pay the Transfer Tax, the Court finds that the

tax exemptions apply to and preempt the Transfer Tax as a matter of law. Thus, the Court denies

Defendants' motion to dismiss and grants Plaintiffs' motion for summary judgment as to the

Federal Plaintiffs and their request for declaratory relief. The Court defers ruling on the motion

for summary judgment as to the Buyer Plaintiffs, however, because they have not fully addressed

whether a declaratory judgment and reversal of the tax assessments is procedurally proper.

# BACKGROUND[1]

Fannie and Freddie are Government-chartered private corporations tasked with establishing a secondary market for residential mortgages and providing stability to that market: both entities provide liquidity to the home mortgage markets by infusing cash to lenders, holding mortgages, and selling homes that they acquire after default and foreclosure.

Congress created Fannie in 1938 as a federal agency, providing in Fannie's charter a tax exemption from state or local taxation, except real property taxation. In 1968, Fannie became a private corporation, but its function and charter did not change. Regarding the payment of taxes, Fannie's tax exemption remained the same:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).

Congress created Freddie, a private corporation, after Fannie became a private corporation and enacted a similar tax exemption:

> The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any territory, dependency, or possession of the United States or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

---

[1] The facts in the background section are taken from Plaintiffs' Complaint and the exhibits attached thereto. The facts in the Complaint are materially identical to the facts presented in the Joint Statement of Undisputed Material Facts (the "Joint Statement"). Because the Court resolves only legal issues raised in Defendants' motion to dismiss for failure to state a claim and Plaintiffs' motion for summary judgment, interpreting statutes, the Court does not rely on the facts presented by the parties to resolve those motions.

12 U.S.C. § 1452(e).

After observing the financial struggles for Fannie and Freddie resulting from the 2008 economic downturn, Congress created FHFA to serve as Fannie and Freddie's regulatory agency, with the power to place Fannie and Freddie into conservatorship. FHFA became their conservator later in 2008, succeeding to all rights, titles, powers, and privileges of each corporation. Congress also provided FHFA with a broad tax exemption:

> The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed.

12 U.S.C. § 4617(j)(2) (collectively, with §§ 1723a(c)(2) and 1452(e), the "Tax Exemption Clauses").

In the course of their operations, Fannie and Freddie purchase mortgages on real estate located in Chicago. Many of these mortgages were the subject of foreclosure proceedings. Foreclosures often result in Fannie and Freddie obtaining title and ownership of the mortgaged homes, and to mitigate their losses on their mortgage purchases, Fannie and Freddie sell these homes to third-party private buyers.

The Transfer Tax, adopted in 1992 and amended in 2008 and 2011, levies a $3.75 tax on every $500.00 of transfer price, which the buyer of the real property must pay unless exempt (the "Buyer Portion"), and a supplemental $1.50 tax on every $500.00 of the transfer price, which the seller must pay (the "Seller Portion"), unless the seller is exempt from paying the tax, in which case the buyer must pay the Supplemental Tax. City of Chicago Municipal Code § 3-33-030.

4

The parties to the real estate sale pay the Transfer Tax by purchasing tax stamps, to be affixed on the deed, assignment, or other instrument of transfer. *Id.* § 3-33-040.

The Buyer Plaintiffs purchased homes from Fannie in 2013, and in March 2015, they received tax determination and assessments from the Department of Finance, which indicated that they owed money for failing to pay the Transfer Tax and penalties, including interest (the "Tax Assessments"). The Buyer Plaintiffs protested the Tax Assessments, which the Department of Administrative Hearings heard. The Administrative Law Judge ("ALJ") assigned to all four protests decided that all of the Buyer Plaintiffs were liable for the tax assessment. The Buyer Plaintiffs then petitioned Jackowiac, the Director of the Department of Administrative Hearings, to review the decisions, which she upheld. Plaintiffs allege that purchasers of Freddie properties and other Fannie properties in Chicago have received the same tax treatment from Defendants. Defendants did not require the Federal Plaintiffs to pay any Transfer Tax or send them any tax assessments.

**LEGAL STANDARD**

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6). A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the

plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies

or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look

beyond the pleadings and view any competent proof submitted by the parties to determine if the

plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572

F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not

its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in

the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.

Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition to opposing Defendants' motion to dismiss, Plaintiffs move for summary

judgment. A party can file a motion for summary judgment at any time. Fed. R. Civ. P. 56(b);

*In re KJK*, 414 B.R. 416, 424 (Bankr. N.D. Ill. 2009). Summary judgment obviates the need for

a trial where there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact

exists, the Court must pierce the pleadings and assess the proof as presented in depositions,

answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P.

56 & advisory committee's notes. The party seeking summary judgment bears the initial burden

of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on

mere pleadings alone but must use the evidentiary tools listed above to identify specific material

facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d

596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to

create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court

must construe all facts in a light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

Plaintiffs' suit follows a nationwide challenge of state and municipal taxes on Fannie's

and Freddie's sales of homes to private parties. In *DeKalb County v. Federal Housing Finance*

*Agency*, the Seventh Circuit determined "whether a state and its local subdivisions . . . can levy a

tax on sales of real property by Fannie Mae . . . and Freddie Mac." *DeKalb County*, 741 F.3d

795, 797 (2013). It held that states and municipalities could not levy a tax on Fannie and Freddie

for their sales of real estate to private purchasers. *Id.* at 800–01.

There remains an open question of whether states and municipalities can impose the

exempt tax amount on the buyer (like the Buyer Plaintiffs) when the seller is Fannie or Freddie.

Defendants first argue that the Court has no subject matter jurisdiction to decide this issue and

that, if it does, the Court should dismiss the lawsuit because the City can require the Buyer

Plaintiffs and other counterparties of Fannie and Freddie to pay Transfer Tax as a matter of law.

Plaintiffs oppose the motion to dismiss and ask the Court to grant summary judgment to

Plaintiffs and declare that the City cannot impose the exempt tax transfers on buyers of Fannie

and Freddie held properties and to rescind the tax assessments on the Buyer Plaintiffs.

## I.      Jurisdiction

As a preliminary matter, Defendants move to dismiss Plaintiffs' lawsuit for lack of

subject matter jurisdiction, arguing that Fannie, Freddie, and FHFA lack standing and that, in the

absence of a Federal Plaintiff with standing, the Buyer Plaintiffs' claims are blocked by the Tax

Injunction Act ("TIA"), 28 U.S.C. § 1341.

### A.      Federal Plaintiff Standing

"[T]he core component of standing is an essential and unchanging part of the case-or-

controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112

S. Ct. 2130, 119 L. Ed. 2d 351 (1992).  The "constitutional minimum" of standing has three

basic components: (1) the plaintiff must have suffered an injury-in-fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision.  *Spokeo Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1545, 194 L.

Ed. 2d 635 (2016).

Defendants argue that the Federal Plaintiffs have not alleged an injury-in-fact because the

City does not assess the Transfer Tax against the Federal Plaintiffs.  A plaintiff must allege an

injury-in-fact that is both "concrete and particularized."  *Id.* (citation omitted).

> For an injury to be "particularized," it "must affect the plaintiff in a
> personal and individual way."  Particularization is necessary to
> establish injury in fact, but it is not sufficient. An injury in fact
> must also be "concrete." . . . We have made it clear time and time
> again that an injury in fact must be both concrete *and*
> particularized.  A "concrete" injury must be "*de facto* "; that is, it
> must actually exist.  When we have used the adjective "concrete,"
> we have meant to convey the usual meaning of the term—"real,"
> and not "abstract."  Concreteness, therefore, is quite different from
> particularization.  "Concrete" is not, however, necessarily

> synonymous with "tangible." Although tangible injuries are
> perhaps easier to recognize, we have confirmed in many of our
> previous cases that intangible injuries can nevertheless be concrete.
> In determining whether an intangible harm constitutes injury in
> fact, both history and the judgment of Congress play important
> roles.

*Id.* at 1548–49 (internal citations and footnotes omitted). Regardless of who pays the Transfer Tax, the Federal Plaintiffs allege that the Transfer Tax "threatens to divert funds from [Fannie and Freddie's] congressionally mandated mission" and that the taxes "unlawfully burden [Fannie and Freddie's] operations by increasing the transaction cost for each transfer." Doc. 1 ¶ 51; *DeKalb County*, 741 F.3d at 800 (taxes on sales are passed from the person who pays the tax to the counterparty by "folding the tax into the price" of the transaction).[2] Plaintiffs identify several buyers of Fannie properties for whom the Transfer Tax has become due, the Buyer Plaintiffs, and they allege that many other buyers of both Fannie and Freddie properties have received the same tax treatment, *see id.* ¶ 49.

Defendants argue that *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39–40, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976), and *Warth v. Seldin*, 422 U.S. 490, 504–08, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975), demonstrate that the Federal Plaintiffs lack any concrete injury because the Supreme Court held in those cases that a plaintiff must complain of a direct harm, not a generalized concern of possible future impacts. *See Simon*, 426 U.S. at 40–42 (plaintiff organization did not have standing to challenge tax ruling just because actions might deter its goal; plaintiff could not identify how the tax ruling frustrated its goal of promoting healthcare access where it did not allege that the ruling resulted in the denial of healthcare access); *Warth*, 422 U.S. at 506–07 (without identifying a specific housing development,

---

[2]    Plaintiffs also reference studies supporting their contention that an excise tax on real property transfers increases the transaction costs of loans to home owners, regardless of who pays the excise tax. *See* Doc. 32 at 19 n.8.

plaintiffs did not have standing to challenge zoning laws' impact on construction of affordable

housing).  Unlike the litigants in those cases, who lacked standing because they could not

identify the concrete impact of the challenged impediment, the Federal Plaintiffs identify exactly

who is paying the transaction cost—the City mandates that every purchaser of a Fannie or

Freddie property must pay the Transfer Tax—and the Federal Plaintiffs then identify how they

themselves are harmed—the tax indirectly can decrease the price that Fannie and Freddie receive

for property that is sold.  *See DeKalb County*, 741 F.3d at 798 (noting that if Fannie or Freddie's

counterparty pays the tax, it might reduce Fannie or Freddie's sale price).

The Federal Plaintiffs allege that the transaction costs paid by the purchasers burden the

Federal Plaintiffs' operational mandates and missions.  Doc. 1 ¶ 58.  Courts have acknowledged

that excise taxes that result in higher costs can contravene the basic purpose of a federally

chartered entity, even when if the federally chartered entity is not the party who pays the tax.

*Laurens Fed. Sav. & Loan Ass'n. v. S.C. Tax Comm'n*, 365 U.S. 517, 522, 81 S. Ct. 719, 5 L. Ed.

2d 749 (1961); *DeKalb County*, 741 F.3d at 797–98.  The Seventh Circuit recognized in *DeKalb*

*County* that if Fannie and Freddie net less money in real estate sales to offload homes, then they

have less money to "pump[ ] into the banking industry that could be used to make more such

loans."  *DeKalb County*, 741 F.3d at 797.  Further, "Congress created Fannie and Freddie to

'establish secondary market facilities for residential mortgages,' to 'provide stability in the

secondary market for residential mortgages,' and to 'promote access to mortgage credit

throughout the Nation.'"  *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, 775 F.3d 1113, 1116 (9th

Cir. 2014) (citing 12 U.S.C. § 1716 (regarding Fannie), and § 1451 note (regarding Freddie)).  If

Fannie and Freddie are hindered in purchasing mortgages, then the primary lenders from whom

they purchase, who otherwise would receive liquidity from the Federal Plaintiffs, cannot lend to

the potential homebuyers that the Federal Plaintiffs have a mandate to aid through greater access

to mortgages. *See Laurens*, 365 U.S. at 522 (noting that because tax would increase the cost to

private savings and loan association for obtaining a loan from the Federal Home Loan Bank, the

tax would contrive Congress's basic purpose for the Home Loan Bank and its tax exemption,

which was providing loans as cheaply as possible).

Particular to Freddie, Defendants also argue that the Complaint names only buyers of

Fannie properties, the Buyer Plaintiffs, thus Freddie has not alleged a live case or controversy

because there are no specifics about buyers of Freddie's properties paying the Transfer Tax. But

Plaintiffs allege that Defendants have collected the Transfer Tax from buyers of Freddie

properties by treating them the same as the Buyer Plaintiffs. Doc. 1 ¶ 49. Plaintiffs do not need

a representative buyer plaintiff for Freddie in order to allege injury—as discussed above,

Freddie's transaction costs rise when purchasers of Freddie properties pay the Transfer Tax and

Freddie's ability to pursue its congressional mandate is therefore diminished. *Humane Soc'y of

U.S. v. U.S. Postal Serv.*, 609 F. Supp. 2d 85, 91 (D.D.C. 2009) (finding that the plaintiff

organization who suffered impaired mission and increased costs because of the defendant's

action had standing and could not be faulted for failing to name the specifics about the events,

allowed by the defendant's rules, that were creating plaintiff's injury-in-fact).

Thus, the Court denies Defendants' motion to dismiss the Federal Plaintiffs' claim for

lack of standing.[3]

---

[3]     The Court acknowledges that another court in this District predicted that the Federal Plaintiffs
would likely lack standing to challenge a real property transfer tax that a Federal Plaintiff did not have to
pay. *See Fannie Mae v. Hamer*, No. 12 C 50230, 2013 WL 591979, at *8 (N.D. Ill. Feb. 13, 2013). The
*Hamer* court viewed the Federal Plaintiffs as "attempting to vindicate . . . interests of . . . the other party
in each real estate transfer." *Id.*    That prediction was *dicta*, and the Court respectfully disagrees. In this
suit, the Federal Plaintiffs sufficiently allege that they are suing to protect their own interests and prevent
harm to their own operations and purposes.

## B.    Buyer Plaintiff Standing

Because the Federal Plaintiffs have standing, Defendants' argument that the TIA strips the Court of subject matter jurisdiction fails.  The TIA does not take away the Court's jurisdiction where FHFA has a valid claim.  *See DeKalb*, 741 F.3d at 803–4 (noting that where FHFA brings suit against a state tax collector, the TIA "falls away" because the TIA "does not constrain the power of federal courts if the United States sues to protect itself or its instrumentalities from state taxation" (citation omitted)).  Defendants acknowledge this, conditioning their argument on the Court finding that the Federal Plaintiffs have no standing to pursue their claims.  Because the Court determines that the Federal Plaintiffs have standing, Defendants' argument is moot.

Therefore, the Court denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

## II.    Application of Tax Exemption Clauses to the Transfer Tax

The Court turns to the legal question raised by Defendants' motion to dismiss for failure to state a claim and Plaintiffs' motion for summary judgment.  In *DeKalb County*, the Seventh Circuit determined the application of the Tax Exemption Clauses to real property sales taxes similar to the Transfer Tax.  *DeKalb County*, 741 F.3d at 797.  The court recognized that the Tax Exemptions exempt Fannie and Freddie from "all taxation" except for real property taxes.  *Id.* at 800–01.  And it noted that real property sales taxes are excise taxes, which can be passed on by the person who pays the tax, by "folding the tax into the price" of the transaction, *id.* at 800, and that an excise tax on a real property sale is a tax on the entity engaged in the transaction, not a tax on real property.  *Id.*  Therefore, because the Tax Exemption Clauses exempt Fannie and Freddie "from 'all taxation' except real property taxation, and a tax on a real estate sale is a tax

12

not on property but on the transfer of property," *id.* at 799, the Tax Exemption Clauses exempted

Fannie and Freddie from paying excise taxes on their real property transfers. *Id.* at 801.

Every other federal circuit confronted with the issue held the same. *See, e.g.*,

*Montgomery County Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1257 (11th Cir. 2015)

(noting that exception to tax exemption was only for real property and declining to extend this

exception to include various state real estate transfer taxes, which were excise taxes); *Bd. of*

*Comm'rs of Montgomery County, Ohio v. Fed. Hous. Fin. Agency*, 758 F.3d 706, 710–11 (6th

Cir. 2014) ("[R]eal estate transfer taxes do not fit into the real property tax carve out . . . While a

county may levy the transfer tax 'on each deed conveying real property or any interest in real

property,' the transfer tax is 'levied upon the grantor named in the deed.' . . . [T]his transfer tax

is an excise tax. . . . Thus, we conclude that the real property transfer tax at issue is an excise tax

upon the grantor of real property for the privilege of transferring real property rather than a real

property tax levied directly against the property [and] . . . not a real property tax that fits within

the statutory exception to the exemptions."); *Bd. of County Comm'rs of Kay County, Okla. v.*

*Fed. Hous. Fin. Agency*, 754 F.3d 1025, 1031 (D.C. Cir. 2014) (holding same); *Town of*

*Johnston v. Fed. Hous. Fin. Agency*, 765 F.3d 80, 86 (1st Cir. 2014) (holding same); *Del.*

*County, Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 228–29 (3d Cir. 2014) (holding same);

*Montgomery County, Md. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 926 (4th Cir. 2014) (holding

same) ; *County of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935, 944 (6th Cir. 2013)

(holding same); *City of Spokane*, 775 F.3d at 1118.

As the Ninth Circuit noted:

> [C]hartering Fannie and Freddie was a means rationally related to
> Congress's regulation of the secondary mortgage market.
> Congress created Fannie and Freddie to "establish secondary
> market facilities for residential mortgages," to "provide stability in

the secondary market for residential mortgages," and to "promote access to mortgage credit throughout the Nation." If Congress had the power to create Fannie and Freddie, it follows that it had the power to protect their statutory mission by exempting them from state and local taxes. As Chief Justice Marshall observed in *McCulloch,* because "the power to tax involves the power to destroy," "a power to create implies a power to preserve." . . . Congress could rationally have believed that, "absent the statutory exemptions, states might be tempted to target Fannie Mae and Freddie Mac with large taxes, given the sheer volume of their mortgage portfolios and their statutory obligations to continue purchasing and guaranteeing mortgages throughout the country." Moreover, Congress might rationally have believed that, without the exemptions, Fannie and Freddie would be exposed to inconsistent taxation, driving them to shift their purchasing activities to states with lower tax rates, thus undermining their statutory mission to increase mortgage liquidity throughout the country.

*City of Spokane*, 775 F.3d at 1116–17 (citations omitted).

Despite the well-settled principle that Fannie and Freddie will not pay excise taxes on their real estate sales, Defendants attempt to avoid the effect of the Tax Exemption Clauses by shifting the obligation to Fannie's and Freddie's counterparties, like the Buyer Plaintiffs. They argue that "counterparties" are not included in the Tax Exemption Clauses' text, so the Buyer Plaintiffs and other buyers of Fannie and Freddie properties are not immune from the Transfer Tax.

In *Federal Land Bank of New Orleans v. Crosland*, 261 U.S. 374, 43 S. Ct. 385, 67 L. Ed. 703 (1923), the Federal Farm Loan Act exempted mortgages executed to Federal Land Banks "from federal, state, municipal, and local taxation." *Crosland*, 261 U.S. at 377 (citation omitted). Alabama law required a tax on lenders' recording of mortgages, and the Federal Land Bank of New Orleans challenged whether it, a Federal Land Bank lender seeking to record a mortgage deed, must pay the tax for recording the mortgage. *Id.* The Supreme Court held that the Federal Land Bank was exempt from paying the tax and that, further, simply having the

borrower, and thus counterparty to the transaction, pay the tax would not change the outcome. *Id.* at 378–79.  Regardless of whoever paid the tax for recording the mortgage, it was still a tax upon the mortgage and forbidden by the law.  *Id.*

In *Pittman v. Home Owners Loan Corporation of Washington, D.C.,* 308 U.S. 21, 60 S. Ct. 15, 84 L. Ed. 11 (1939), a federal statute exempted another federally chartered corporation, the Home Owners' Loan Corporation of Washington, D.C., from "all taxation (except surtaxes, estate, inheritance, and gift taxes)").  *Pittman* , 308 U.S. at  30 & n.3.  Maryland imposed a recording tax on every mortgage, and the Home Owners' Loan Corporation challenged whether the tax was valid on its mortgages.  *Id.* at 29–30.  The Home Owners' Loan Corporation's tax immunity from virtually all taxation was a "broad exemption" with the "manifest purpose" of allowing Home Owners' Loan Corporation to loan money in exchange for mortgages as security. *Id.* at 31–32.  The mortgage and recording of the mortgage were indispensable elements in the operations authorized by Congress.  *Id.* at 32.  The exemption from state and local taxes showed that "Congress ha[d] undertaken to safeguard the operations of the Home Owners' Loan Corporation by providing . . . [tax] immunity."  *Id.* at 33.  Therefore, the tax exemption prevented Maryland from imposing the tax on the recording of the mortgage.  *Id.*

Finally, in *Laurens Federal Savings and Loan Association*, the Supreme Court answered the question of whether it was proper to require a private party to pay a stamp tax on promissory notes executed by the private party to secure loans from a federal entity that Congress had exempted from virtually all taxation.  *Laurens Fed. Sav. & Loan Ass'n*, 365 U.S. at 522.  South Carolina levied a tax on a savings and loan association for the promissory notes it issued to secure loans from the Federal Home Loan Bank, which had a tax exemption from all taxation except real estate taxes.  *Id.* at 519.  The savings and loan association paid the tax and challenged

15

whether the Federal Home Loan Bank's tax exemption meant the savings and loan borrower was not required to pay the stamp tax. *Id.* at 522. The intent of the Federal Home Loan Bank was to increase the amount of money available for mortgage funds at the lowest cost to the homeowner, and the statutory tax exemption followed that intent. *Id.* at 521–22. Therefore, because the tax imposed on the borrower increased the cost of borrowing and contravened the purpose of the Federal Home Loan Bank and its Congressionally-created tax exemption, the South Carolina could not levy the tax on the borrower, who was the counterparty to the Federal Home Loan Bank's loan. *Id.* The Supreme Court noted that "[r]egardless of who pays the . . . taxes, the necessary effect of the taxes is to increase the cost. . . . In its impact, therefore, this tax whether nominally imposed on the [federal tax exempt entity] or its [counterparty on the loan], is bound to increase the cost . . . and thus contravene the basic purpose of Congress." *Id.* at 522.

Defendants argue that Fannie's and Freddie's counterparties pay the Transfer Tax, therefore, the tax exemption does not apply. But *Laurens Federal Savings and Loan Association* rejected this line of thought. *See id.* at 520 (noting that although the state court found the tax exemption did not apply because the stamp tax "was assessed against the borrowing petitioner association rather than against the exempt lender", the Court rejected that distinction and "the fact that the state taxing statute did not require payment of the tax by the lender has 'no determining significance,'" because "'whoever pays it[,] it is a tax upon the mortgage and that is what is forbidden by the law of the United States'") (quoting *Pittman*, 308 U.S. at 31)). The person who pays an excise tax can pass the tax on by "folding the tax into the price" of the transaction. *DeKalb County*, 741 F.3d at 800. *Pittman* and *Laurens Federal Savings and Loan Association* demonstrate that regardless of who pays the tax, a tax that contravenes the purpose

16

of Congress in creating a federal entity and its corresponding tax exemption is unlawful. *See Laurens Fed. Sav. & Loan Ass'n*, 365 U.S. at 522; *Pittman*, 308 U.S. at 31.

Fannie and Freddie suffer when they face higher transaction costs because it means less money that they can reinvest into the secondary mortgage market. Simply put, Fannie and Freddie must lower the price they are willing to accept for their properties because the buyers are saddled with additional costs not associated with transactions involving non-tax exempt sellers. In order to remain competitive with those non-tax exempt sellers, Fannie and Freddie must discount their selling price to offset the increased transaction costs for the buyers. *See DeKalb County*, 741 F.3d at 799 (noting that "[t]he result is that the 'real' taxpayer is, at least to a large extent, not the nominal taxpayer"). Should Fannie and Freddie be reluctant to build the increased transactional costs into the sale price of their properties, they would quickly find themselves without buyers and subsequently, funds to pump into the secondary mortgage market. Additionally, when only some localities increase transaction costs, Fannie and Freddie might ignore those local markets—some of whom are most in need of shoring up after the sub-prime mortgage crisis. *See id.*; *City of Spokane*, 775 F.3d at 1116–17; *see also* Laughlin Cutler, *How the Pursuit of the American Dream Turned into Chicago's Housing Nightmare*, 17 Pub. Int. L. Rep. 107, 107, 109 (2012) (noting that between 2006 and spring 2012 "nearly 100,000 homes in Chicago have gone into foreclosure"); Geoff Smith & Sarah Duda, Woodstock Inst., *Roadblock to Recovery: Examining the Disparate Impact of Vacant Lender-Owned Properties in Chicago* 3 (2009) *available at* http://www.woodstockinst.org/sites/default/files/attachments/ RoadblocktoRecovery_gsmithandsduda_9_2009_0.pdf (noting that in Chicago between 2005 and 2008, there were 14,340 properties that completed the foreclosure process and reverted to lender ownership); Remarks Of Daniel P. Lindsey, *The Subprime Mortgage Mess: A Chicago*

*Perspective*, 24 Loy. Consumer L. Rev. 455 (2012) (providing firsthand perspective of the impact of the subprime mortgage crisis on Chicago from legal assistance attorney).[4]  These combined effects frustrate the purpose of Fannie's and Freddie's Congressional mandate and the tax immunity that Congress granted in the Tax Exemption Clauses, which was to increase and ensure national access to mortgage liquidity.  *See Laurens Fed. Sav. & Loan Ass'n*, 365 U.S. at 522 (Congressional tax exemption aligned with the overall Congressional policy of making mortgage funds available at low cost to home owners, and, regardless of who paid the tax, paying taxes increased cost of loans to homebuyers in contravention of Congressional policy); *City of Spokane*, 775 F.3d at 1116–17.   The Court finds that when Fannie and Freddie sell properties they own pursuant to a mortgage default and those sales are taxed, the Transfer Tax harms Fannie and Freddie regardless of who—Fannie, Freddie, or a counterparty like a Buyer Plaintiff—pays the tax, in contravention of the Tax Exemption Clauses.  *See Laurens Fed. Sav. & Loan Ass'n*, 365 U.S. at 522 (noting that impact of tax would negatively affect the Federal Home Loan Bank regardless of whether the Federal Home Loan Bank paid the tax).

In *DeKalb County*, the Seventh Circuit held that the Tax Exemption Clauses mean that Fannie and Freddie do not pay real estate sale taxes like the Transfer Tax.  *DeKalb County* , 741 F.3d at 800–01.  In *Laurens Fed. Sav. & Loan Ass'n*, the Supreme Court held that a state or local entity cannot flip an excise tax from a federal entity to its private counterparty in order to levy the tax because doing so still negatively impacts the federal entity with the tax exemption.  *Laurens Fed. Sav. & Loan Ass'n*, 365 U.S. at 522.  Read together, one learns from *DeKalb* that Fannie and Freddie's Tax Exemption Clauses cover the Transfer Tax, and from *Laurens Fed. Sav. & Loan Ass'n* that the Tax Exemption Clauses prevent Defendants from applying the

---

[4] According to the Woodstock Institute, there were 128,956 foreclosure filings between 2008 and 2015 in Chicago's 77 community areas compared to 66,868 completed foreclosure auctions.  *See* Woodstock Inst. Website, *available at* http://www.woodstockinst.org/content/foreclosure.

Transfer Tax to Fannie's and Freddie's real estate sales, regardless of whom Defendants require to pay the tax. The net result is that Defendants cannot require Fannie's and Freddie's counterparties to pay the Transfer Tax.

The Court therefore denies Defendants' motion to dismiss for failure to state a claim and grants Plaintiffs' motion for summary judgment.

## III.   Reversal Of Tax Assessments Against Buyer Plaintiffs

The Buyer Plaintiffs seek an order reversing the Tax Assessments against the Buyer Plaintiffs. "[D]istrict courts shall not enjoin, suspend or retrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The parties do not address whether the Court has the power to enjoin or otherwise overturn the tax assessments issued to the Buyer Plaintiffs, especially where the Buyer Plaintiffs had the opportunity to appeal Jackowiak's final ruling and decisions to the Circuit Court of Cook County under the Illinois Administrative Review Act, 735 Ill. Comp. Stat. § 5/3-1-1 *et seq.* within thirty five days of Jackowiak's ruling and decision. *See* Doc. 27 ¶ 22; Doc. 27-10 at 2–3, 5–6, 8–9, 11–12; *DeKalb County*, 741 F.3d at 803 (noting Fannie and Freddie possessed an adequate state court remedy to challenge in state court taxes that were similar to the Transfer Tax). Further, the Joint Statement contains no facts regarding efforts to appeal and whether any appeals are pending in the Illinois courts.[5] The Court thus defers ruling on Plaintiffs' motion for summary judgment as it relates to the Buyer Plaintiffs' request in the Complaint to overturn the Tax Assessments.

---

[5] The first ALJ reviewing the assessment of the Transfer Tax on the Buyer Plaintiffs' purchases declined to decide whether federal law prevented taxation on transfers with Fannie because it found it lacked authority to review federal preemption issues. Doc. 27-6 at 18; Doc. 27-7 at 18; Doc. 27-8 at 18; Doc. 27-9 at 18.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion to dismiss [14] and grants in part Plaintiffs' motion for summary judgment [25], granting summary judgment to the Federal Plaintiffs and deferring decision on judgment as to the Buyer Plaintiffs pending clarification of the current status of administrative rulings on tax assessments issued to the Buyer Plaintiffs.  Accordingly, the Court issues a declaratory judgment that real property transfers involving Fannie, Freddie, and FHFA are exempt from the City's Transfer Tax while deferring further ruling and a final entry of judgment.

Dated: September 29, 2016

_____
SARA L. ELLIS
United States District Judge